# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

BRADLEY JAMES INMAN,

        Defendant-Appellant.

UNPUBLISHED
December 27, 2016

No. 328368
Oakland Circuit Court
LC No. 2015-253442-FC

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

BRADLEY JAMES INMAN,

        Defendant-Appellant.

No. 328370
Oakland Circuit Court
LC No. 2015-253495-FC

Before: SERVITTO, P.J., and STEPHENS and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant was convicted by a jury of three counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(b) (sexual penetration with a member of household between 13 and 16), and three counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) (one count based on sexual contact with a person under 13) and MCL 750.520c(1)(b) (two counts based on sexual contact with a member of household between 13 and 16). He was sentenced to 17½ to 30 years' imprisonment for the CSC-I convictions, and 71 months to 15 years' imprisonment for the CSC-II convictions. Defendant appeals as of right. We affirm.

This case arises out of multiple sexual assaults committed by defendant against his stepdaughter, SB. The sexual assaults took place over a number of years in the townships of Waterford and White Lake, which resulted in separate charges being filed in the 51st District Court (Waterford) and the 52-2nd District Court (White Lake), but the matters were eventually consolidated for trial. At trial, SB testified in general terms about the ongoing molestation that defendant subjected her to over a period of approximately three or four years. She also recalled a

-1-

number of specific incidents in which defendant rubbed her vagina with his hand or put his finger between her vaginal lips. The prosecutor offered a video recording and transcript of an interview between defendant and Detectives Christopher Bellings and Jeff Way, in which defendant admitted that he had touched SB inappropriately. Defendant conceded in his interview that he touched SB's vagina on four occasions and that, during one of the incidents, he used his finger to separate her vaginal lips. Defendant's trial testimony was largely consistent with the disclosures he made during the recorded interview. On appeal, defendant seeks various forms of relief based on allegations of prosecutorial misconduct, ineffective assistance of counsel, and sentencing errors.

## I. PROSECUTORIAL MISCONDUCT

For his first claim of error, defendant alleges two instances of prosecutorial misconduct, both of which arose during defendant's cross-examination. According to defendant, the prosecutor erred by mischaracterizing a statement he made during his police station interview and by asking defendant to comment on SB's credibility.

"In order to preserve an issue of prosecutorial misconduct, a defendant must contemporaneously object and request a curative instruction." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Defense counsel made a timely objection to the prosecutor's alleged mischaracterization of evidence, and the trial court issued a cautionary instruction. Therefore, this issue is preserved. By contrast, although defense counsel timely objected when the prosecutor asked defendant if SB was a liar, defendant answered the prosecutor's question about SB's credibility before the trial court ruled on the objection. The trial court asked defense counsel if he intended to change his objection to a motion (presumably a motion to strike), and defense counsel answered "I'll let it go, Judge." No curative instruction was requested or given. Thus, to the extent that defendant claims that the prosecutor erred by asking defendant to comment on SB's credibility, the issue is unpreserved. Moreover, there is no error to review when, rather than forfeiting an issue by failing to assert a right in a timely manner, the defendant waives an issue by intentionally relinquishing a known right. *People v Dobek*, 274 Mich App 58, 65; 732 NW2d 546 (2007). By affirmatively indicating that he would "let it go," defense counsel effectively waived appellate review of this issue.

We review preserved claims of prosecutorial misconduct de novo to determine if defendant was denied a fair and impartial trial as a result of the alleged misconduct. *Bennett*, 290 Mich App at 475. But when the issue of prosecutorial misconduct was not preserved in the lower court, this Court's review is limited to plain error affecting substantial rights. *People v Parker*, 288 Mich App 500, 509; 795 NW2d 596 (2010). Under a plain error standard of review, the defendant must demonstrate that a plain or obvious error occurred and that the error affected his or her substantial rights. *People v Sardy*, 313 Mich App 679, 708; 884 NW2d 808 (2015), citing *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003). This Court will not reverse a conviction based on prosecutorial misconduct if a curative instruction could have alleviated the prejudicial effect of the misconduct. *Id*. at 329-330.

When a prosecutor's remarks are challenged on appeal, this Court examines the record and evaluates the remarks in context. *Id*. at 330. This Court evaluates the prosecutor's remark "in light of defense arguments and the relationship they bear to the evidence admitted at trial." *Id*. As a general rule, prosecutors are given great latitude in their arguments at trial. *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009). But that latitude is not without limitation. For example, a prosecutor may not argue facts that are not in evidence or mischaracterize the evidence that has been presented. *Callon*, 256 Mich App at 330; *People v Watson*, 245 Mich App 572, 588; 629 NW2d 411 (2001). Defendant contends that the prosecutor erred by asking him during cross-examination about the four counts of CSC-I that he chose to admit during his police station interview. According to defendant, the prosecutor's inquiry mischaracterized the statement he made to Detectives Bellings and Way because his purported admission arose in response to Detective Bellings's lie about the distinction between the different degrees of criminal sexual conduct, rather than an admission of the acts that would constitute four counts of CSC-I.

As already noted, the prosecutor's inquiry must be viewed in context. *Callon*, 256 Mich App at 330. During cross-examination, the prosecutor questioned defendant about several aspects of the police station interview. In the interview, which was recorded and played for the jury at trial, defendant admitted that he touched SB's vagina on four occasions. In describing his contact with SB, defendant said things like, "I touched her inappropriately," or "I touched her down there," but continuously maintained that there was never any penetration involved. When defendant recalled the most recent incident, Detective Way asked if defendant had put his finger between SB's vaginal lips when he was rubbing her vagina. Defendant stated that he did so and asked if that amounted to penetration. Neither detective answered defendant's question initially. Later, defendant explained that there was a difference between touching a vagina and "fingering," which, to him, meant "sticking your finger in somebody's vagina." When defendant asked for a second time if what he did would be considered penetration, Detective Bellings answered, "The penetration ah into the vagina, is, is breaking the plane of the lips, yeah." At this point defendant first referred to CSC-I, saying

> [*Defendant*]: [S]o that's considered f****** first degree.
>
> [*Detective Bellings*]: Yeah
>
> [*Defendant*]: There's no way in hell man that I did that s***, not like that, there's no f****** way.
>
> [*Detective Bellings*]: With her age to your age and your relationship, it's first degree anyway because you're her step-dad and then there's the age difference.
>
> [*Defendant*]: So I'm f****** (inaudible) f*** . . . I didn't mean to do any of this to her, I don't know why the f*** I did it, are you kidding me? I know it's wrong man but damn man does it really mean . . . .

Shortly thereafter, defendant remarked, "What that is right there is what, 4 first degrees and a 4ᵗʰ maybe?" It was this remark that prompted the prosecutor to ask defendant during cross-examination about how he "chose to admit to four times of CSC first degree."

While prosecutors cannot mischaracterize evidence, they are free to argue reasonable inferences that arise from the evidence. *Callon*, 256 Mich App at 330. Although defendant's reference to four counts of CSC-I was not made until after Detective Bellings misinformed[1] defendant that "it's first degree anyway" because of defendant's familial relationship with SB and the disparity in their ages, defendant's remark was also made within moments of Detective Bellings's explanation that penetration included breaking the plane of the labia. Thus, defendant's "admission" was ambiguous in the sense that it is unclear if he believed he committed CSC-I four times because of his new understanding of what constituted penetration, or because he was misinformed that his relationship with SB would be determinative of whether he would be charged with CSC-I. To the extent that defendant's remark was borne from his understanding that penetration of the labia amounted to penetration, the prosecutor's question did not mischaracterize the evidence. Detective Bellings explanation regarding the definition of penetration was accurate,[2] and defendant's initial confession about merely "touching" SB's vagina four times was made before he realized that he had an incomplete understanding of what acts constituted penetration. Thus, the prosecutor's reference to defendant's admission was a reasonable interpretation—rather than a mischaracterization—of the evidence.

Moreover, defendant was not prejudiced by the prosecutor's question because he had several opportunities to explain his misunderstanding. For example, just before the prosecutor's question about his admission, the prosecutor also asked, "When you learned that the name of what you did was something different it was your response to this detective that's four counts CSC first degree[?]" and defendant answered, "That's after the detective stated that first degree was considered by relationship and by age." Additionally, defendant's interpretation of his purported admission was further clarified during his redirect examination:

> *Q.* Brad, Ms. Brown just asked you some questions about Criminal Sexual Conduct First Degree and why you might have been under the impression that what the incidence is or some of them -- these incidences involved first degree, and you stated that the officer told you it was -- some of these charges might be based on age and relationship.
>
> *A.* That is correct.
>
> *Q.* Explain to the jury what you mean by that.

---

[1] Detective Bellings acknowledged that he lied to defendant at various points during the interview.

[2] See *People v Legg*, 197 Mich App 131, 133; 494 NW2d 797 (1992) (finding that "[t]he labia are included in the 'genital openings' of the female" for purposes of determining if sexual penetration occurred).

*A*. The detective stated that -- well, I asked if that was first degree. I believe that's what -- what went down. And he came back at me with it was first degree no matter what because of age and relationship. So I base my statement off of that. You know, I thought I had four first degrees because of her age and she was my stepdaughter.

*Q*. But in actuality there's only one time, that would have been in White Lake after homecoming, where your fingers separated [SB]'s lips; is that correct?

*A*. That is correct.

It is clear that the jury accepted defendant's explanation because his "admission" related to events that occurred in both Waterford and White Lake, and the jury ultimately acquitted defendant of the CSC-I charges that arose in Waterford.

Defendant also contends that the prosecutor erred by asking him about SB's credibility. As already noted, defendant waived this issue when his trial attorney indicated that he would "let it go," and did not request a curative instruction. Nonetheless, even if this issue were properly before this Court, defendant has not demonstrated that this error affected his substantial rights or warrants reversal. Undoubtedly, it is improper "for a prosecutor to ask a defendant to comment on the credibility of prosecution witnesses since a defendant's opinion on such a matter is not probative and credibility determinations are to be made by the trier of fact." *People v Knapp*, 244 Mich App 361, 384; 624 NW2d 227 (2001), quoting *People v Loyer*, 169 Mich App 105, 117; 425 NW2d 714 (1988). Thus, by asking defendant if he was calling SB a liar, the prosecutor clearly erred. However, "it is presumed that instructions cure most errors," *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011), and this Court has held that a timely objection would have cured the error under similar circumstances, see *People v Gaines*, 306 Mich App 289, 308; 856 NW2d 222 (2014) (stating that objection would have cured error arising from prosecutor's question to the defendant about witness credibility). Although defense counsel waived his objection to this error, the trial court did instruct the jury before its deliberations that it must decide which witnesses to believe and what weight to give their testimony. Because this Court presumes that jurors follow their instructions, *Mahone*, 294 Mich App at 212, there is no reason to believe that the prosecutor's error affected defendant's substantial rights or the outcome of the proceeding.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

For his next claim of error, defendant contends that he was denied the effective assistance of counsel because his attorney made inflammatory and denigrating remarks about him during closing arguments. We disagree.

To preserve a claim of ineffective assistance of counsel, the defendant must bring a motion for a new trial or request a *Ginther*[3] hearing to establish the basis for his claim. *People v*

---

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

*Sabin (On Second Remand)*, 242 Mich App 656, 658; 620 NW2d 19 (2000). Defendant did not move for a new trial or request an evidentiary hearing pursuant to *Ginther*. Therefore, this issue is not preserved for appeal. Ineffective assistance of counsel claims present a mixed question of fact and constitutional law. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). Findings of fact are generally reviewed for clear error, and rulings on questions of constitutional law are reviewed de novo. *Id*. However, when the defendant's ineffective assistance of counsel claim was not preserved at the trial court level, this Court's review is limited to errors that are apparent from the record on appeal. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

To establish a claim of ineffective assistance of counsel, the defendant must show that: (1) counsel's representation at the proceeding "fell below an objective standard of reasonableness"; and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012), citing *Strickland v Washington*, 466 US 668, 688-694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001), quoting *Strickland*, 466 US at 694. This Court presumes that defense counsel rendered effective assistance and exercised reasonable professional judgment in all significant decisions. *Vaughn*, 491 Mich at 670. "Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim." *Carbin*, 463 Mich at 600.

In framing his ineffective assistance of counsel claim, defendant notes that defense counsel called him a "despicable, horrible guy," and asked the jury, "Who would like a guy that molests a child?" While these selective quotes could call defense counsel's performance into question, a complete review of defense counsel's closing argument provides a proper context for defense counsel's remarks and reveals the essence of his strategy in this case. Both of the remarks cited by defendant were contained in the beginning of defense counsel's closing argument; therefore, we will quote that portion of the transcript in full:

> I think we all agree with Ms. Brown that this is a very disturbing situation. Brad Inman did some very bad things. What he did was horrible and I'm sure that most of you, if not all of you, don't like this guy. Who would like a guy that molests a child? However, the Judge is going to tell you that bias, prejudice, and sympathy cannot be used when you evaluate the facts of this case to come to a conclusion whether or not Brad Inman is guilty or not guilty. You have to base your opinion on the evidence, evidence that was presented in this court, and not that this guy is a bad guy, is a despicable guy, he's a horrible guy, based upon what he did.
>
> So let's take a look at this evidence for just a minute.

The defendant must "overcome the strong presumption that counsel's performance was born from a sound trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). Defendant has failed to overcome this presumption. Despite defendant's contention that his trial counsel essentially acted as a second prosecutor, it is clear from even this small portion

of the closing argument that defense counsel was acting in accord with the strategy he employed throughout the trial. That is, from the very beginning of defense counsel's opening statement—when counsel said, "Brad Inman is here today . . . to accept responsibility for his behavior. . . . But what he doesn't want is . . . to be held responsible for something he did not do"—it was clear that the defense strategy was for defendant to concede guilt to some, but not all, of the charged offenses. Importantly, "where the evidence obviously points to defendant's guilt, it can be better tactically to admit guilt and assert a defense or to admit guilt on some charges but maintain innocence on others." *Matuszak*, 263 Mich App at 60-61.

Moreover, this strategy was consistent with the evidence presented by the prosecution. During defendant's police station interview, he readily admitted that he molested SB multiple times over a number of years, and characterized his own conduct as "incredibly bad." Defendant's trial testimony was consistent with the admissions he made during his interview. Recognizing the impact of defendant's admissions, defense counsel addressed it in a frank and strategic manner: he acknowledged the probable reaction the jury would have in response to defendant's admissions and took the opportunity to remind the jury that it had to set its "bias, prejudice, and sympathy" aside and determine defendant's guilt or innocence based on the evidence. Defense counsel then proceeded to point out the deficiencies in the prosecutor's case, specifically noting the unreliable evidence concerning when defendant first penetrated SB's labia or how frequently that act occurred. Thus, it is clear that defense counsel's performance was consistent with a sound trial strategy.

Defendant has also failed to establish that defense counsel's performance prejudiced him. Even if defense counsel had not referred to defendant as a "guy that molests a child," or used terms like "bad," "despicable," or "horrible," to describe defendant, the jury could have drawn those inferences from the evidence presented against defendant. During his interview and at trial, defendant admitted that he touched SB's vagina several times and, on at least one occasion, also separated her vaginal lips and touched her clitoris. In his interview, defendant also acknowledged the instinctual negative reaction to his admission, saying things like "I'm sick but I'm not that sick." Similarly, at trial, defendant said, "I did something that was terrible," and "I still hate myself." Thus, even if defense counsel's closing argument had some prejudicial impact, it is unlikely that such prejudice affected the outcome of the proceedings because defendant's own statements at trial, and during his interview, conveyed the same impressions articulated by defense counsel.

## III. SENTENCING ERRORS

Defendant presses several claims of error on appeal relating to his sentencing. We will address each argument separately.

### A. CONSECUTIVE SENTENCING

First, defendant contends that he is entitled to resentencing because the trial court relied on a mistaken belief of the law relating to the consecutive sentencing provision in MCL 750.520b(3). In connection with this claim of error, defendant also asserts that he was denied the

effective assistance of counsel because his trial attorney should not have questioned the court about whether defendant's sentences would be consecutive or concurrent and because he misadvised the court concerning MCL 750.520b(3) and failed to correct a mistake of law. As noted above, defendant did not move for a new trial or request an evidentiary hearing pursuant to *Ginther*; therefore, to the extent that defendant asserts another basis for finding that he was denied the effective assistance of counsel, this issue is unpreserved.

This Court reviews a trial court's decision to impose consecutive sentences for an abuse of discretion. *People v St John*, 230 Mich App 644, 648; 585 NW2d 849 (1998). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). We review defendant's unpreserved ineffective assistance of counsel claim for errors that are apparent from the record on appeal. *Matuszak*, 263 Mich App at 48.

Pursuant to MCL 769.34(10), this Court must affirm a minimum sentence that falls within the applicable statutory guidelines range, unless there was an error in scoring or the trial court relied on inaccurate information. *People v Schrauben*, 314 Mich App 181, 196; 886 NW2d 173 (2016). But when a defendant's sentence is the result of the trial court's mistaken belief in the law, resentencing is generally warranted. *People v Green*, 205 Mich App 342, 346-347; 517 NW2d 782 (1994). Defendant was sentenced pursuant to the C-V cell of the class A sentencing grid, which called for a recommended minimum sentence range of 10½ to 17½ years' imprisonment. MCL 777.62. Because defendant's ultimate sentences fell within the applicable sentencing guidelines range, this Court must affirm defendant's sentence unless there was an error in scoring the guidelines or the trial court relied on inaccurate information.

Defendant contends he is entitled to resentencing because the court relied on a mistaken belief of law, namely, that it had the authority to impose consecutive sentences for his convictions. It is important to note that the trial court did *not* choose to impose consecutive sentences for any of defendant's convictions. Instead, the trial court ordered what it considered to be "somewhat of an intersection as opposed to complete consecutive [sentences]," by increasing its originally articulated minimum sentences (16 years' imprisonment) by 1½ years, resulting in minimum sentences of 17½ years' imprisonment for defendant's CSC-I convictions. Nonetheless, if, as defendant asserts, the court was not authorized to order consecutive sentences for his convictions, it still relied on a mistake of law to determine defendant's sentences.

"In Michigan, concurrent sentencing is the norm, and a consecutive sentence may be imposed only if specifically authorized by statute." *People v Ryan*, 295 Mich App 388, 401; 819 NW2d 55 (2012), quoting *People v Brown*, 220 Mich App 680, 682; 560 NW2d 80 (1996) (internal quotation marks omitted). Pursuant to the statute setting forth the elements and potential penalties for CSC-I, a trial court "may order a term of imprisonment imposed under this section to be served consecutively to any term of imprisonment imposed for any other criminal offense arising from the same transaction." MCL 750.520b(3). For purposes of MCL 750.520b(3), criminal offenses arise from the same transaction if they "grew out of a continuous time sequence" and "had a connective relationship that was more than incidental." *Ryan*, 295 Mich App at 403-404. However, "an ongoing course of sexually abusive conduct involving episodes of assault does not in and of itself render the crimes part of the same transaction." *People v Bailey*, 310 Mich App 703, 725; 873 NW2d 855 (2015).

-8-

SB testified that defendant molested her too many times to count, and there was little effort made at trial to identify which of defendant's acts formed the basis for each of the charges against defendant, or defendant's resulting convictions. The only distinction that is clear from the record is that each of defendant's CSC-I convictions arose from the charges in Docket No. 328368, which related to the events that occurred after defendant and his family moved to White Lake in October, 2013. SB testified that, while they were living in White Lake, defendant came to her room when he got home from trade school on Tuesday nights and rubbed her butt and vagina. She also indicated that defendant used his fingers to separate her vaginal lips and go inside "the hole." SB's recollection of the Tuesday evening assaults demonstrated that defendant engaged in two criminal sexual conduct offenses in the course of a single assaultive event: (1) sexual contact sufficient to warrant his conviction for CSC-II (i.e., intentional sexual contact with SB's intimate parts, MCL 750.520a(q); MCL 750.520c(1)(b)(*i*)); and (2) sexual penetration sufficient to warrant his conviction for CSC-I (i.e., digital penetration of SB's vagina, MCL 750.520a(r); MCL 750.520b(1)(b)(*i*)). That event grew out of a continuous time sequence and had a connective relationship that was more than incidental; therefore, there was evidence demonstrating that defendant's resulting convictions arose from the same transaction. As such, the court was, in fact, authorized to impose a sentence for at least one of defendant's CSC-II convictions that was consecutive to at least one of his CSC-I convictions. To the extent that the trial court's ability to impose at least one consecutive sentence affected its determination of defendant's minimum sentences, the trial court was not improperly influenced by a mistaken belief of law.

Furthermore, because defendant's contention that the trial court relied on a mistaken belief of law lacks merit, we also reject defendant's related ineffective assistance of counsel claim. As noted above, to establish that a defendant was denied the effective assistance of counsel, the defendant must demonstrate that his attorney's performance fell below an objective standard of reasonableness and that there is a reasonable probability that the outcome of the proceedings would have been different in the absence of defense counsel's deficient performance. *Vaughn*, 491 Mich at 670. Defendant has not met his burden with respect to the first prong of this test. Although concurrent sentencing is "the norm," *Ryan*, 295 Mich App at 401, consecutive sentencing was authorized by statute for the reasons explained above. Thus, it was not objectively unreasonable for defense counsel to clarify whether the trial court intended to exercise its discretion regarding consecutive sentencing under MCL 750.520b(3)—particularly when the presentence investigation report explicitly indicated that the court could impose consecutive sentencing with respect to three of defendant's convictions. Once the matter was raised, defense counsel had an ethical duty to truthfully advise the court about the applicability of MCL 750.520b(3). See MRPC 3.3(a)(1) (providing that a lawyer shall not knowingly "make a false statement of material fact or law to a tribunal"). Moreover, while complying with his ethical duty to the court, defense counsel also continued to advocate for defendant's interests by making a thoughtful and coherent argument for concurrent sentencing in defendant's case. Admittedly, an increased prison term flowing from a trial attorney's deficient performance is sufficient to establish prejudice for purposes of an ineffective assistance of counsel claim. *Glover v United States*, 531 US 198, 200; 121 S Ct 696; 148 L Ed 2d 604 (2001). Nonetheless, because defendant cannot demonstrate that defense counsel's performance fell below an objective standard of reasonableness, he cannot establish the factual predicate for his ineffective assistance of counsel claim.

Defendant also alleges that he is entitled to resentencing because the circumstances surrounding his offenses did not support the trial court's scoring of OV 8 (victim asportation or captivity). Specifically, defendant argues that it was clear from SB's testimony that he committed the underlying offenses in whatever location they happened to be in at the time—thus it was improper to assess 15 points under OV 8 because he did not move SB to a different location to isolate her or put her in greater danger. We disagree.

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hershey*, 303 Mich App 330, 335-336; 844 NW2d 127 (2013), quoting *People v Hardy*, 494 Mich 430, 438; 835 NW3d 340 (2013). Whether the statutory scoring conditions are satisfied by the trial court's findings of fact is a question of statutory interpretation, and therefore reviewed de novo. *Hershey*, 303 Mich App at 336.

Under OV 8, the sentencing court should assess 15 points if a victim was "asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense." MCL 777.38(1)(a). Asportation is not defined in the sentencing guidelines, but this Court has determined that, for purposes of OV 8, the movement must "not be incidental to committing an underlying offense." *People v Spanke*, 254 Mich App 642, 647; 658 NW2d 504 (2003). Additionally, asportation does not require the use of force against the victim—thus, OV 8 can be properly scored even if the victim voluntarily agreed to move with the defendant to a place or situation of greater danger. *Id*. at 647-648. "A place of greater danger includes an isolated location where criminal activities might avoid detection." *People v Dillard*, 303 Mich App 372, 379; 845 NW2d 518 (2013).

SB testified that on the occasion when defendant assaulted her before taking her to the movie theater, she initially talked to defendant about her plans while they were sitting on a couch in the living room. As she explained the details of her outing, defendant got underneath the blanket that was covering her, put his hands in her pants, and rubbed her vagina. When he agreed to take her, SB left the room to get ready. About 10 minutes later, SB found defendant lying on his bed, with his bedroom door open. SB recalled that she stood in the doorway and told defendant she was ready to leave. At the time, SB's half-brother CI was behind her in the living room. Defendant instructed her to close the door and come closer to the bed. Though she was reluctant to do so, SB complied. After she closed the door and moved further into the room, defendant pulled down her pants and rubbed her vagina as he masturbated. Although defendant denied that he touched SB's vagina in the living room that day, he admitted during his interview that he called her into his bedroom and touched her breasts while he masturbated. Defendant also acknowledged CI's presence that day, but stated that "[CI]'s never seen anything, ah, you know I kept it hidden from him."

It is clear from this testimony that defendant's contention that there was no asportation involved in the CSC offenses because they occurred wherever he and SB "happened to be at the time" lacks merit. In *People v Chelmicki*, 305 Mich App 58, 71; 850 NW2d 612 (2014), this Court held that there was sufficient evidence of asportation to assess points under OV 8 where the defendant dragged the victim from her balcony, which was visible to her neighbors, to the

secluded interior of her apartment before assaulting her. Like the defendant in *Chelmicki*, defendant asported SB to a place of greater danger by luring her into an isolated room where CI—the only other person in the house—would be unable to witness defendant's assault. See *Spanke*, 254 Mich App at 648 (The victims were without doubt asported to another place or situation of greater danger, because the crimes could not have occurred as they did without the movement of defendant and the victims to a location where they were secreted from observation by others.") Although defendant did not engage in the forceful asportation that was at issue in *Chelmicki*, OV 8 can be scored even when the victim voluntarily accompanies the defendant to a place of situation of greater danger. *Spanke*, 254 Mich App at 647-648. Therefore, the trial court properly assessed 15 points under OV 8.

## C. *LOCKRIDGE*[4] ERROR

For his final claim of error, defendant summarily concludes that he is entitled to a *Crosby*[5] hearing pursuant to *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). We disagree.

To preserve a claim that judicial fact-finding resulted in an increased mandatory minimum sentence in violation of the defendant's constitutional rights, the defendant must object to the scoring of the statutory guidelines on that basis at the time of sentencing. *Id.* Defense counsel's only objection to the calculation of defendant's score was based on the applicability of OV 8. As such, defendant's *Lockridge* issue is not preserved for appeal.

In *Lockridge*, our Supreme Court held that Michigan's statutory sentencing scheme violated the Sixth Amendment principles articulated in *Alleyne v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013), because it required a mandatory increase in the minimum-sentence range imposed upon a defendant based on judicially found facts that required proof by only a preponderance of the evidence. *Lockridge*, 498 Mich at 399. To remedy the constitutional violation, the Court severed the mandatory language in MCL 769.34(2) and (3), thereby rendering the sentencing guidelines "advisory only." *Id.* at 391-392, 399. Recognizing that the vast majority of appeals that would ensue from its decision would be unpreserved in the trial court level, the *Lockridge* Court established a standard to be applied in such cases. *Id.* at 394. In cases in which "(1) facts admitted by the defendant and (2) facts found by the jury were sufficient to assess the minimum number of OV points necessary for the defendant's score to fall in the cell of the sentencing grid under which he or she was sentenced," the defendant is entitled to no relief because the trial court's sentencing did not infringe upon the guarantees of the Sixth Amendment by mandatorily increasing the minimum sentencing range based on judicial fact-finding. *Id.* at 394-395. On the other hand, a defendant can demonstrate that his or her Sixth Amendment rights were actually impaired if the facts admitted at trial or found by the jury "were *insufficient* to assess the minimum number of OV points necessary for the defendant's score to fall in the cell of the sentencing grid under which he or she was sentenced." *Id.* at 395. Thus,

---

[4] *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015).

[5] *United States v Crosby*, 397 F3d 103, 117–118 (CA 2, 2005).

the *Lockridge* Court concluded that "all defendants (1) who can demonstrate that their guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment and (2) whose sentences were not subject to an upward departure can establish a threshold showing of the potential for plain error sufficient to warrant a remand to the trial court for further inquiry." *Id.* at 395.

Here, the trial court assessed a total of 90 OV points when calculating defendant's sentencing guidelines score for his CSC-I convictions (SIR). To reach that total, defendant was assessed points under OV 8, MCL 777.38 (victim asportation or captivity); OV 10, MCL 777.40 (exploitation of vulnerable victim); OV 12, MCL 777.42 (contemporaneous felonious criminal acts); and OV 13, MCL 777.43 (continuing pattern of criminal behavior). On appeal, defendant's only challenge with respect to the scoring of the OVs arose in connection with OV 8. Although the prosecutor concedes that defendant is entitled to a *Crosby* remand pursuant to *Lockridge*, we disagree. Regardless of whether a finding of victim asportation was necessary to defendant's convictions, defendant admitted that he called SB into his bedroom and instructed her to close the door before he molested her. For the reasons already set forth above, this action constituted victim asportation such that the trial court properly assessed 15 points under OV 8. Thus, because defendant admitted the facts that were necessary to assess points under the challenged OV, the trial court's calculation of defendant's sentencing guidelines score does not implicate the concerns set forth in *Lockridge* and defendant is not entitled to a *Crosby* remand.

Affirmed.

/s/ Deborah A. Servitto
/s/ Cynthia Diane Stephens
/s/ Amy Ronayne Krause

-12-